Mr. Poteet, when you are ready. Thank you, Your Honor. May it please the Court, Good morning. I represent Mid-Continent Casualty Company in this case. This is an insurance coverage case. The primary argument today is that the Appley-Kipp Flores Architects KFA did not approve coverage under the insurance agreements at issue in this case. The policy terms are important. The insurance policies involved in this case apply to sums the insurance coverage because of advertising injury, which is a defined term, to which the insurance applies. The particular alleged advertising injury involved in this case is copyright infringement in the insurance advertisement. And in this case, the policies define advertisement as a notice that is broadcast or published to the general public or specific market segments about your goods, products, or services for the purpose of attracting customers or supporters, and it includes material on the Internet. KFA obtained a judgment for damages against Mid-Continent's insured Hallmark Design homes for copyright infringement. All of the damages awarded were based on profits from the construction and sale of houses. Yeah, we're pretty familiar with the background. Your argument starts on the proposition that the houses themselves cannot be advertisements. Isn't that right? That's correct. That's correct. I want to talk to you about that. I mean, I think the record in the earlier trial indicated that this was the main feature of the builder to sell those houses. He had model houses, and I think there was testimony from some of your insured's people that said this is the main attraction that persuaded people to buy a house. Now, why would that not be an advertisement? Well, you have to look at the policy language, which is why I read it a moment ago. The policy language doesn't apply to any kind of advertisement. It applies specifically to a notice that's broadcast or published. Well, why is this not notice? I mean, certainly an audit should meet the dictionary definition of notice. I mean, what is your limitation on that word? Well, most people, when they think of something that's broadcast or published, it's a notice that is broadcast or published. They think of something that's in a newspaper, in a magazine. There's a concept of wide dissemination, and that's what's addressed in the consolidated graphics case that this court issued not too long ago. There's got to be an element of dissemination. Certainly, Hallmark used these houses for marketing or solicitation, but not every kind of marketing effort, not every kind of solicitation, not every kind of promotion is an advertisement within the meaning of this policy. Now, some of the older cases involve policies that have the term course of advertising, copyright infringement in the course of advertising, and actually the consolidated graphics case considered both that policy term and the one at issue in this case, but with respect to an element of dissemination. So, when you consider this policy definition of broadcast publication, you know, you're talking about something that's kind of put out on the airwaves or that's printed and put on mock. What about a sign that says model home with a big red arrow pointing to the house? Well, there may be a question of dissemination, but the problem with a sign in this case is there's no evidence of any copyright infringement in any sign. Well, the house itself was a copyright infringement, and the sign points to the house itself was a copyright infringement, wasn't it? But that's... And the sign points to the house. I mean... Well, it doesn't. I mean, it says Hallmark Design Homes according to the testimony, but it is in front of the house, so you can make that association, certainly, but the point of the policy is to cover broadcasts and publications that are advertisements and not actual physical houses. Nothing physical can be an advertisement? I'm sorry? Nothing physical can be an advertisement? I don't think the product itself can be an advertisement. Certainly, a house is not a broadcast, and it's not a publication. It just doesn't fit. We apply insurance policy terms, unless they're specifically defined, according to their ordinary and common meaning, and no one would go to say... No one would say, I'm going to my publication tonight. No one would say, I'm going to buy this broadcast. No one would say, you know, the front door of my notice. It's just... It is not the way we use language. We talk about a broadcast as something on the radio, includes the internet. We talk about something that's in the newspaper. Those are things that are broadcasts and publications, and houses. A billboard, what's your view about a billboard? We don't have any billboards at issue in this case. I know, but how would you deal with a billboard? It's a common form of advertising. A billboard is a form of advertising, and if it's, you know, a billboard that's put next to the interstate, seems like a notice that's seen by a lot of people, whether it is here to me, but again, we don't have a billboard in this case. So, the issue in what the district court decided, and the only thing that the district court decided, was that they use these houses for their marketing, and a house just is not an advertisement according to the terms of this policy. What about a storefront where you have mannequins that have clothes on them, and the public walks by on the street and they see the clothes on the mannequin. Is that an advertisement? It may be. It's not an advertisement as defined in this policy. Although a billboard might be, a mannequin is not? It's marketing, but it's not an advertisement that's a notice that's broadcast or published. The point is, insurance companies are entitled to write the coverage that they want to, and so the policy term is limited in that way to notices that are broadcast or published to the general public. So, no, I don't think clothes on a mannequin constitute a broadcast or a publication. And because of... What if you lose on that point? Where are you then? Because of that, I'm sorry, was there a question? What if you lose on that point? What if we disagree with you on that point? Okay, I appreciate that question. If you disagree with me on that, then there's the issue of concurrent causes, because, and this is something that the district court never addressed. We raised it, and we cited Texas cases, we cited Fifth Circuit cases applying the doctrine of concurrent causes. So that concept is that the House is constructed in infringement of the copyrights, it was sold in infringement of the copyrights, and hypothetically, assuming that, it's an advertisement in violation of the copyrights, and you can't separate those things very well. If you don't have the construction, the infringing construction, you don't have a sale of profits or damages. If you don't have the sale, you don't have the profits or damages. I'm not sure about the advertisement. I'm not sure I see the cause there, and that's the whole issue in this case. But assuming, for the most part, that's the case, then you've got inseparable causes. What is the other concurrent cause? If we take, I think, pretty much uncontested facts from the record that the main attraction that caused people to buy houses was the houses themselves, and if the copyright damages required disgorgement of profits, why wouldn't that be the source of all the damage? Well, it's the construction and sale. The what now? It's the construction and sale of the houses, Your Honor. That's what led to the damages, and construction and sale, separate from advertising, is not covered, and this Court held that in the Century Insurance case and the Delta case, and that's part of our issue with the District Court's decision. It's well established that the duty to indemnify under an insurance policy is based on facts adjudicated. And, for example, this Court stated in Catt Tech, our duty is to evaluate whether the adjudicated facts of the underlying proceedings determining liability are sufficient to determine the issues of coverage. And then, this Court held in Dalholl Navigator, and more recently in the Graper case, that facts adjudicated plainly means to rule upon judicially. So we put those cases before the Court, the District Court, and the District Court just didn't apply them. Distinguish them, didn't apply them. But those are settled authority, controlling authority of this Court. And the verdict and the judgment only determine damages based on profits from the construction and sale of infringing houses. So then you go to this Court's opinions in Century Insurance and the Delta Computer case, and those are duty to defend cases, but they're still, they still control because the issues in those cases were whether there had been a pleading of copyright infringement in advertisements. And there hadn't been. The Court held in both of those cases. The Century Court held that the policy covers a copyright infringement suit only if the insured infringes someone's copyright in the course of its advertising. The Century Court said if the insured defendant infringes a copyright in another context, that's construction and sale, there is no coverage under the terms of the policy. And the Delta Court reiterated the same thing. There's no coverage when there's no causal connection between copyright infringement and advertising. So what you have is a verdict and a judgment in the Hallmark case for profits, for a portion of profits from the construction and sale of houses. And without an advertising component, that's not covered. So it's not covered under the course of advertising policy. It is certainly not covered under the more specific definition of advertisement that we have in this case. So we have a coverage case. And we didn't take the position in this case that because there was no adjudicated finding of advertisement or damages because of advertising, that they couldn't prove that in our case. They could in MidContinent likewise because there are other coverage offenses. But they just didn't. They relied on the notion that the house itself is an advertisement. And the discussions of Texas law of advertising in the sports supply case and in the consolidated graphics case don't say anything about a product itself being an advertisement. And in this case, we have the specific limitation to broadcasts and publications. And it just does not fit. It's not a reasonable construction of the policy. You know, there may be an esoteric sense or a third or fourth definition sense. But the common definition of advertisement does not apply to a house, whether it's the primary force of the marketing or not. It may be what the market, but it's not what the policy covers. And that's the issue. And that's what I think got missed. You didn't assert this in the summary judgment before the district court in this case, did you? Yes, sir. Coverage defense? I'm sorry? Did you assert the defense in the summary judgment before the court in this case? The defense? That there were other concurrent causes? Yes. And you put affidavits in on what the difference is between profit from the sale of the house and the construction of the house? No, I didn't need any affidavits. It's the coverage claimant's burden to prove, to offer evidence, to segregate. Theoretically, what would that be? How would you go about computing the difference between that? I'm not sure. That's their burden, too. Well, but I'm asking you, how would you do it? I mean, is this just a theoretical argument? Or could there be proof put on to show that there's a difference? It could be that the house purchaser comes in and says something about how much they considered the advertisement or how much that, you know, what percentage that led to them buying the house. I mean, what gets sold is the house. The house is what matters. You know, I'm sorry, that was Mr. Partain, said they weren't selling houses off a plan. That's the only way that I can think of. The person, you know, who bought the house would have to testify to it. Now, if this case involved one house, I don't think anybody would think that was a big deal, but it involves over 380 houses. So it's a significant undertaking. But they were seeking $83 million at the trial of this case. So the jury awarded, ultimately, they received 3.2, far less than the 83 million that they were seeking. So we think that it's not reasonable to apply these policy terms to a physical house, actual product. And there's no Texas case that holds that a product is its own advertisement under these policy terms. You would say that even with respect to the model homes? Even with respect to the model homes? Yes, Your Honor. It's not a broadcast or a publication. It may be an advertisement in some other sense, but this policy is more narrowly drafted. And I really don't think it is. Even the course of advertising cases require something that's widely disseminated. And this doesn't qualify, but under the more narrow terms of this case, it certainly doesn't apply. Even though it's on a major highway and thousands of people see it? We just don't have these facts. It's not. Beg your pardon? We don't have these facts, Your Honor. We don't know where the model home was located? Well, it's in subdivisions. We know where the subdivisions are. People drive by? A lot of people drive by and see it, and that's not widely broadcast? I don't think it meets the definition of something that's a broadcast or a publication, Your Honor. It's public, isn't it? It may be public, but it's not a publication. Have you got a case that limits the term in that way? Not a Texas case. I do know of an out-of-state case, Santa's Best Craft. It's a 941 Northeast 2nd, 291. What does it say? At 303-306. What does that case say? It says, the policy does not define broadcast or publish. Therefore, we look to the dictionary to ascertain the words plain, ordinary, and popular meanings. The term broadcast means to make widely known, disseminate, or distribute widely or at random, cites Webster's. To publish means to declare publicly, to make generally known, to disclose, circulate. Webster's, under the terms of the CGL policy in advertisement, must be widely disseminated to its intended audience regardless of whether the audience is the general public or a specific market segment. This comports with our interpretation of advertising in general, which contemplates the widespread distribution of promotional material to the public at large. What was the item claimed to be advertising? Well, I just have this blurb here, and I'm sorry. I can't recall what the item was in that case. I'm sorry. You do agree that the model homes themselves infringed the copyright? As a construction, yes. Unless it was the first one built. Well, the ones that were not patented. The ones that weren't licensed. As constructed, the homes themselves infringed the copyright. Except for the first one built. That was licensed. Yes. Okay, Mr. Zumo. May it please the Court. My name is Patrick Zumo. I'm counsel for Kip Flores Architects, which is the affilee here, who is the defendant below. Mr. Bonham and I represented Kip Flores both in the underlying copyright infringement case and then in the subsequent declaratory judgment action. And I also represented Kip Flores in the appeal of that underlying copyright infringement case. I would like to just begin by responding to my opponent's argument about publication and the plain meaning of publish. And broadcast. And broadcast. We disagree, obviously. The meaning of this insurance policy that we start with the policy language itself, it doesn't define publish or broadcast. It also does not include this statement that it must be, quote, widely disseminated. As with any insurance issue, if Mid-Continent wanted the language to be that restrictive, Mid-Continent could have put that type of language in its policy. In Texas, publication, in a different context, of course, in the context of libel, slander, defamation, has been regularly defined by the Texas Supreme Court. And in a case that we cited at page 29 of our brief in the footnote, 1976 case, the Texas Supreme Court said publish means communicating the statement to a person who is capable of understanding its meaning. And we believe that the communication is the key to the term publish and certainly a sign in front of the house, as I believe the panel has indicated, that is a communication. When you put them together, the sign and the infringing house, you have an infringement that's used in a notice that's published for the purpose of attracting customers. Judge Nellen, in his opinion, pages 6 and 7, said the evidence established is beyond any question that Hallmark used the infringing materials to publicly announce the presence of their product in an effort to induce customers to purchase Hallmark homes, meaning that the infringing materials were used as advertisements. Judge Nellen got it right. And if Mid-Continent wanted this to have a more restrictive meaning, they could have written that language into their policy. We cited a case both to the district court and to this court. It's an interesting case, we think, because it is directly on the issue of how home builders use the houses themselves as advertisements. It's King v. Continental Western, which is a state court case from Missouri, but it involved advertising injury coverage and copyright infringement in the district. The court takes several paragraphs to explain how the home building industry uses the houses themselves. It's not just that the sign in front of a house says, this house is for sale. It also is the broader purpose of advertising and communication to say, this is the kind of house, the quality of house, the good-looking, curb-appeal house that you can get if you come to Hallmark Design. It serves both those purposes. Judge Davis, your question about the mannequin and the product itself. This came to me just watching the Super Bowl last Sunday. But Nike spent over a billion dollars to put its products in the form of uniforms and shoes on all the players in the NFL. They're not doing that as some sort of charitable contribution to the NFL. The NFL can afford to buy uniforms and shoes. That's what's called product placement. It's one of the most effective forms of advertising. If you watch a movie or television show, some drink company, Coke or Pepsi, will pay to put that product in the movie. They don't ever say, buy Cokes or their $1.99 a six-pack. It's still a form of advertising. It's considered one of the most effective forms of advertising. What was done here, and as the record is undisputed, is that the best way to sell houses for Hallmark Design homes was through model homes and through the houses themselves. But there is another type of advertising here that is undisputed. It's not just the houses themselves. Hallmark put the floor plans and representations of what the houses look like in print advertising and also in a website. Hallmark admits in their brief that the website is advertising. In the policy language itself, it says advertising and advertisement includes the website. In the trial, was there any evidence that anybody ever saw the floor plans in the print website? We didn't have any customers testify to that, Your Honor. We did have Mr. Partain, the owner of Hallmark Design Homes, testify that this is what they did. And then in his deposition given in this case, he testified more clearly that they did it for the purpose of selling homes. But we do not have, of the 400 houses that were originally at issue, we didn't bring in 400 homebuyers to testify that I bought this house because of this advertisement. That issue, Your Honor, has been addressed in a different type of product case, a different copyright case. It's a Ninth Circuit decision, Andreas v. Volkswagen. And one form of copyright infringement damages are called indirect profits. Once you've shown under your policy that, unquestionably, when they put it, Hallmark Crimes put it in print and on the Internet, whose burden is it to segregate damages? Once we prove that the damages And what's your best case? Well, once we prove that the damages are the result of copyright infringement, that establishes the causation that's required in the policy. The concurrent causation argument that MidContinent makes here is, it has a different meaning. And the best case, Your Honor, is a decision from the Dallas Court of Appeals in Texas called MidContinent Insurance v. Castaña. And this court, a different panel of this court, cited the Castaña opinion when it decided on rehearing in the Crownover v. MidContinent case. They cited it for the insurance carrier is collaterally stopped if they provided a defense in the underlying case. But Castaña also said that concurrent causation means that you have an uncovered type of loss in the underlying judgment and then a covered type of loss. Here, we don't have any loss in the underlying judgment other than damages from copyright infringement. And under the Castaña decision, that concurrent causation issue doesn't even arise. I think counsel is saying there's a possible concurrent cause of damage other than advertising injury, though. Obviously, it's copyright infringement, but he's saying, I don't cover all copyright infringement. I only cover it if it's caused by advertising injury. And so he's saying that even assuming the houses are advertising, there are other causes. So what do you say to that? Well, first, the copyright infringement that was found by the jury in this case and the judgment's based on was in advertising. And under the policy language, that's all we have to prove, is that there was damages that they are legally obligated to pay from an offense. The offense is copyright infringement. I have a very specific question. Let's assume you can prove that one—this is a hypothetical—assume that you put on evidence at trial that one person went to a website or saw a print advertisement with this, with the architectural design, and bought the house because of that. So that's clearly covered under the policy. It's an advertising copyright infringement. Once you've got that, that there has been damage, and then there's no proof as to 399 houses. We don't know if they bought based on the model home or they bought based on the website print material. Whose burden is it to segregate it out? We have to prove that there are damages from the copyright infringement. And I believe that the Ksenia case that I mentioned does that. But as far as the—we don't—there is no obligation to segregate out that there are an individual buyer who bought for some reason other than an advertisement. If there was advertising injury— Whose burden is it to prove that every house, all 400 were advertising injuries? Is it your burden or once you prove one, does that shift the burden? That's my question. I still want to go back. Under the—we presented to the court a discussion from an insurance treatise that explains how this new advertisement definition got into the ISO form of insurance policies. It doesn't require—the causation doesn't require that you show that the advertisement was the cause of each dollar of damages. The proof is was the advertisement caused in a but for just a connection link with liability for copyright infringement. And in the Andreas case, the Ninth Circuit said it wasn't—that the defendant there made that argument, that every dollar of damages here was linked to a particular person seeing a particular advertisement that had the Audi or the Volkswagen in it. And the Ninth Circuit said that's not what the—that's not what indirect profit proof under the Copyright Act requires. So we think that the Ksenia case, which is the Dallas Court of Appeal case, 410 Southwest 3rd, 445, answers the concurrent causation question, and we think that the Andreas answers that. That's not an insurance policy question, is it? Ksenia was an insurance case. It was an insurance policy case with the same concurrent causation argument that Midcontinent is making here. Did you cite that in your brief? We did not, but it was cited in the new Crown Over opinion that we provided to the court in a letter after the opinion came out. And it was cited in Crown Over at 772 F. 3rd at 209. But it shows that Midcontinent has made this argument over and over, that it's a regular argument they make. And even though the Dallas Court didn't accept that argument and said that's not the way concurrent causation works, they're still making the argument here. The whole issue of— You had evidence in the trial, I think from the other side, as I remember the briefs that said that the main attraction to buy these houses just generally was the model house and the houses themselves. We had in the underlying case and in the deposition of Hallmark's president, Mr. Partain, that was taken in this DEC action, we do have the direct testimony that nobody buys a house sight unseen. So do we have to go further and prove each buyer actually looked at a particular ad to buy a particular house? We do not think so. That's not our burden. We have the evidence that all buyers buy houses only after they see the house. And one thing that that does too, I think if we just use our common sense, when people respond to advertising and respond to advertising campaigns, you don't generally buy what you're buying because of a specific exposure to a specific advertisement. That's why they do product placements. That's why you use billboards. And in this case, we have the evidence that the best way of advertising houses, the best way of selling houses, was model homes and then the houses themselves. So that's how they sell houses in the home building business. Partain and Hallmark Design are not an outlier here. The King case from  the best way to sell their houses. And so we do have evidence, Judge Owen, that there is, since nobody buys a house sight unseen, that's undisputed in the record, that the houses themselves represent a form of advertising and therefore you have an infringement in advertising injury. And that's the cover of the insuring agreement that says if they're legally obligated to pay because of advertising injury, it's covered. So what if the jury also thought that the copyright was infringed in the construction of the house itself? And so why wouldn't you have to separate out the damages for that infringement? And that goes back to that Castagna case and the explanation of this provision in the insurance treatise Appelman. It's not that you have a link between the advertisement and each particular element of damage, but that you have a link between advertisement and the liability, the copyright infringement liability. And we did have that here. The construction of the house, Judge Davis, I don't know how you can separate that from then the house becomes a means of advertising. The home builders put their signs in front of houses before they're even framed up and before you can see what they look like. So it's out front so that you know as a customer, I can buy this particular house, I can buy a model home and pick one out and buy that lot and have them build the house on that lot. There's another aspect of this, Judge, that I think it's how the copyright case was tried and what the jury verdict did on damages. The Copyright Act sets out a burden of proof for the parties. When Mr. Poteet said that we originally sued for $83 million, under the Copyright Act, we have the obligation to prove the revenues from the infringing activity. The defendant has the burden of proving the expenses and the defendant can also show that there are other elements of profit that didn't factor into the infringement. They did that here. The jury found a number for revenues for each design, for the expenses for each design, and then out of the net profits that when you read the jury verdict, they already have an allocation built into the underlying case that we only have effectively 10% of the net profit that's the result of copyright infringement itself. So that's in the case. They had the opportunity to make that evidence. They did. The jury made its findings. It's collateral estoppel as to them in this coverage case. I'd like to just briefly address the adjudicated argument that Mr. Poteet made. The Texas case law on that is that there has to be an adjudication, but it's the facts and the evidence that underlie that adjudication that we look to to see if it falls within coverage. Below, MidContinent made the argument that the jury verdict or the judgment had to specifically track the language of the insurance policy or it wasn't adjudicated within coverage. They've abandoned that argument here. They didn't brief it, and they've now proposed a new argument on appeal, which we believe is something that can't be considered, that it has to be under the, quote, same facts. But the Texas cases, the Gilbert, Texas v. Underwriters at Lloyd's, and the cases that are cited by Gilbert all make it clear that if the record in the underlying case has evidence of a covered offense, then those facts, that satisfies this adjudicated facts test. We believe, Your Honors, that this really isn't as complicated as MidContinent would like it to sound. We have an insurance policy that only has three portions that deal with the insuring agreement, what they'll insure, what advertising injury is, and what's the definition of advertisement. That's always a question of law for the court to construe the contract. We have an undisputed underlying record from a fully tried copyright infringement case, a case that the earlier panel of this Court affirmed the judgment in two days after oral argument. And now we have what we believe is, with all respect, is a very well-written, very concise order from Judge Nellen that sets out the reasoning for his summary judgment. They've had their chance to make the arguments that they wanted to make in the underlying case. They control the defense. Summary judgment is perfectly appropriate in cases like this where you have an insurance contract that's a matter of law to construe and an undisputed factual record in the underlying case. And for those reasons, we believe Judge Nellen was correct, and we would pray that the Court affirm Judge Nellen's judgment. Okay. Thank you, sir. Back to you, Mr. Poteet. Thank you, Your Honor. We should begin with the proposition that the policy, to the extent that it covers copyright infringement at all, only covers it in an advertisement as defined in the policy. The jury verdict in the Hallmark case only awarded damages for the construction and sale. It is silent as to any advertising or any damages because of advertising injury. And a fact adjudicated means a fact judicially ruled upon. This Court's precedent means it's not whatever evidence gets introduced. So... The record in the underlying case can be used in summary judgment on coverage, can it not? It certainly can. So in this case, there is evidence of advertising, but there's no evidence of causation. And that is our point. There's no evidence. The things that were advertisements, the website, there's no evidence of any causal connection between those advertisements and any of the damages that were awarded. And this Court's precedent on the duty to indemnify, facts adjudicated, the fact that insurance coverage for copyright infringement does not exist independent of the advertising. And that's how it is in the Hallmark verdict. So we come to this case and look and ask what the evidence is of causation. And setting aside, and I understand the issue, but setting aside whether a house is a publication or a broadcast, there's not any evidence to connect any of the website material or anything else for that matter with any of the purchases. That's what they didn't do. And they chose not to do it, but that's what they didn't do. Now, I heard all the talk about marketing of the houses and Nike's marketing of shoes in the Super Bowl. That certainly is advertising, and it's certainly marketing, but it's not advertising under the terms of this policy. The Nike shoes also are not broadcasts or publications in any way that people normally would use those words. So proving copyright infringement and proving damages from the house for coverage. This case was about what they needed to prove for coverage, and they chose not to. They just relied on the record in that case, and it's insufficient to establish causation. With respect to concurrent cause, this Court said in the Cooper case that the doctrine embodies the basic principle that insurers are not entitled to recover under their insurance policies unless they prove their damages covered by the policy. So again, if you accept as a hypothetical, they proved, they alleged and proved that Hallmark infringed the copyrights in building the house and in selling the house. Both of those things are independent. They're acts of infringement, each one. And then if you add the sale, the advertising, and say that that led to the sale, then you've got all those things contributing to the amount. And it's the claimants, the coverage claimants' burden to offer evidence to segregate the covered, which is the advertising part, from the non-covered, which is the construction and sale part. And there isn't any evidence. And that's fatal to their claim. I'm citing the Comstas Info, Case 130, Southwest 3rd at 198. There's some law out there that says when you have multiple causes for damages and one of those causes is covered, it doesn't matter if there are other causes. If they combine to cause the loss, as has to be the case if we're talking about a single house that's constructed in violation, sold in violation, and purportedly advertised in violation, then those causes combine and the doctrine of concurrent causes applies. That's our position. With respect to the Costagna case, I may need to go back and read it. I recall that that's a construction defect case that involves those issues. And the reason it's cited in the Crown over Rehearing Opinion is for the idea that Mid-Continent was bound. Here, there was no finding in the Hallmark case of advertising injury or damages because of advertising injury, but Mid-Continent was held by the District Court to be bound by a finding not made. It wasn't made. And they're holding Mid-Continent's bounded by it. And it's that proposition of privity and being bound that's mentioned in the Costagna case, as far as I recall it. It's necessary not only to prove copyright infringement and profits from the sale of infringing houses, but also to prove coverage within the terms of the policy. They didn't want to have to do that, and the Court didn't make them do that, but that's what they have to do. Thank you.